IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| Connie Jackson and Jeffrey Jackson, | |
|---|---|
| Plaintiffs, | |
| v. | Civil Action No. 3:16-cv-716 |
| LeMond Companies, LLC, LeMond Composites, LLC, Greg LeMond, Nicolas Wegener, Alex Jacome, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT

Defendants LeMond Companies, LLC, LeMond Composites, LLC, Greg LeMond, Nicolas Wegener, and Alex Jacome, by and through counsel, respectfully file their Memorandum in Support of Defendants' Motion to Dismiss and for Partial Summary Judgment ("Motion") as to the claims asserted by the Plaintiffs, Connie Jackson and Jeffrey Jackson.

## INTRODUCTION

This dispute belongs elsewhere. The core of this lawsuit is a dispute between former business partners who agreed to litigate their disputes in a different forum. Plaintiff Connie Jackson breached her agreements with Defendant LeMond Companies, and LeMond Companies has brought its claims against her where they belong—in a pending Minnesota lawsuit. Ms. Jackson must bring her claims (if at all) within that action. This action should be dismissed for all of the following independent reasons:

**First,** the federal claims (Counts I and II) should be dismissed or severed. In a transparent attempt to manufacture federal jurisdiction and avoid application of binding forum selection clauses, Plaintiffs purport to assert federal Wiretap Act and wage and hour claims. But the Wiretap Act claim is subject to dismissal under Rule 56 because the undisputed facts show that no violation occurred, and the wage and hour claim must be severed or dismissed under Rules 20 and 21 because it is brought by a different plaintiff and has no relation to the other claims.

**Second,** upon dismissal or severance of the federal claims, the remaining state law claims (Counts III–VII) should be dismissed under 28 U.S.C. § 1367(c)(3)**.** None of the state law contract and tort claims support federal jurisdiction on its own. Indeed, even if a federal claim somehow survived, all other claims should *still* be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), because they share no common nucleus of operative facts with the federal claims.

**Third,** the core claims in this case should be dismissed under Rule 12(b)(6) because they arise from or relate to contracts that mandate litigation in Minnesota or Delaware, not Tennessee. And two of the state law claims fail for the additional reason that they are procedurally barred derivative claims.

**Fourth**, even if none of the above were correct, Ms. Jackson's claims still would not belong in this Court and should be transferred to the District of Minnesota, under 28 U.S.C. § 1404(a).

## I.    General background

Defendants LeMond Companies, LLC ("LeMond Companies") and LeMond Composites, LLC ("LeMond Composites") are in the business of developing, producing, and selling carbon fiber. Plaintiff Connie Jackson ("Ms. Jackson") claims to be the "inventor" of a patented process for producing carbon fiber ("the Patented Technology"). The patents covering that process are held by Oak Ridge National Laboratory ("ORNL").

LeMond Companies holds a license from ORNL to produce and sell carbon fiber using the Patented Technology ("the License"). In connection with and following LeMond Companies' acquisition of the License, Ms. Jackson represented to Defendants that she alone possessed the confidential information, trade secrets, and know-how necessary to execute the Patented Technology described in the License, and that she was therefore indispensable to the success of LeMond Companies' business.

## II.   The relevant agreements and forum selection clauses

Ms. Jackson sues for alleged breach of two separate agreements and alleged torts related to those agreements. (*See* Compl. [Doc. No. 1.] Counts III-VII.) First, Ms. Jackson contends that one or more Defendants breached obligations arising from an Operating Agreement (and subsequent amendments) (collectively, "the Operating Agreement")[1] to which she agreed as part of joining LeMond Companies. (*See id.* Counts V, VI, and VII

---

[1]    Plaintiffs filed an incomplete version of the Operating Agreement, which omits the "Venue" provision identifying Minnesota as the "exclusive jurisdiction" for resolution of disputes. (*See* Compl., Ex. B.) A complete version of the October 11, 2016 Second Amended Operating Agreement is provided beginning at page JA0120 of the Joint Appendix (hereinafter "JA").

(wrongful removal).[2]) The Operating Agreement includes a "Venue" provision, in which Ms. Jackson expressly agreed that courts in Minnesota would have "exclusive jurisdiction" over all disputes arising out of the Operating Agreement:

> If either party brings against the other party any proceeding arising out of this Agreement or arising out of disclosure or use of Confidential Information, that party may bring that proceeding only in the United States District Court for the District of Minnesota or in any state court of Minnesota sitting in Hennepin County, Minnesota, and each part hereby submits to the exclusive jurisdiction of those courts for the purposes of any such proceeding. Each party hereby waives any claim that any proceeding brought in accordance with this Section has been brought in an inconvenient forum or that the venue of that proceeding is improper.

(JA 0144-145 § 12.8.)

Second, Ms. Jackson also seeks to enforce an Employment Agreement that she executed on October 21, 2016. (Compl. Count IV.) She further seeks to invalidate certain portions of that agreement. (*Id.* Counts III and VII (fraud).) The Employment Agreement contains a forum selection provision whereby the parties agreed to litigate all disputes related to the Employment Agreement in either Minnesota or Delaware:

> Any legal proceedings related to this Agreement shall be brought in Delaware in the Sussex County District Court or the Delaware District of the U.S. District Court, and each of the parties hereto hereby consents to the exclusive jurisdiction of the Minnesota state and federal courts for this purpose. The parties acknowledge the existence of sufficient contacts to the State of Delaware and Sussex County to confer jurisdiction upon these courts.

(JA 0117 § 25.) Ms. Jackson does not seek to sue over any agreement that requires or permits litigation in Tennessee.

---

[2]    The Complaint contains two counts labeled "Count VII." Hereinafter, the first is referred to as "Count VII (wrongful removal)" and the second is referred to as "Count VII (fraud)."

## III.     The Lucintel call and recording

Although Ms. Jackson alleges that there was a teleconference with the research firm Lucintel in November 2016, no such call occurred. (JA0029 ¶ 2; JA0077 ¶ 14.) There *was* a call with Lucintel on October 28, 2016 ("the Lucintel call"). (JA0029–32 ¶¶ 3–10; JA0073-75 ¶¶ 2–7.) One of the parties to that call, Defendant Alex Jacome, recorded the substantive portions of the discussion. (JA0031–32 ¶¶ 8–9.) Defendant Jacome was openly invited to the call, and multiple parties to the call were aware of his presence on the line. (JA0029-31 ¶¶ 3–5, JA0035-49; JA0073–74 ¶¶ 2–4, JA0078–90.) Defendant Jacome recorded the call on his own initiative and as part of his longtime use of recordings to help him learn and process the content of verbal communications. (JA0031 ¶ 8.)

## IV.     Jeffrey Jackson

Plaintiff Jeffrey Jackson is Ms. Jackson's husband. (*See* Compl. ¶ 55.) He alleges that he was an employee of LeMond Companies and LeMond Composites. (*Id.* ¶ 39.) He further alleges that he was not paid as required under the Fair Labor Standards Act. (*Id.* ¶ 99–107.) Apart from this stand-alone allegation, Mr. Jackson has no other relevant relation to the lawsuit or the claims asserted by his wife.

## V.     Termination of Ms. Jackson and procedural history

On December 9, 2016, LeMond Companies terminated Ms. Jackson's employment and canceled the Contribution Agreement through which Ms. Jackson was to become a member of LeMond Companies due to various breaches of the Employment Agreement, Contribution Agreement, and Operating Agreement. Shortly thereafter, LeMond Companies learned that Ms. Jackson was engaging in conduct that violated her post-

employment duties. Discussions between counsel ensued, during which counsel for LeMond Companies made it clear that LeMond Companies was prepared to immediately commence a lawsuit against Ms. Jackson, but preferred first trying to resolve this dispute through mediation. (JA0001 ¶ 2.) Ms. Jackson's attorneys agreed to negotiate an agreement to mediate instead of LeMond Companies acting immediately to file its planned lawsuit. (*Id.*) At the end of a week of discussions in which Ms. Jackson's attorneys repeatedly represented that she intended to mediate and denied that they were delaying things so they could "win a race to the courthouse," Ms. Jackson instead filed this lawsuit on December 30, 2016. (JA0002–4 ¶¶ 4–6, 8.) Ms. Jackson's counsel then waited until January 3, 2017 to disclose that Ms. Jackson filed her Complaint on December 30, 2016. (JA0003–4 ¶ 7.) That same day, LeMond Companies provided a courtesy copy of a Complaint for its lawsuit in Hennepin County, Minnesota, where the parties had agreed to litigate their disputes and where LeMond Companies has commenced a lawsuit against Ms. Jackson. (*Id.*, JA0005–28.)

## ARGUMENT

### I.    The federal claims should be dismissed or severed.

Plaintiffs attempt to use two federal claims as the jurisdictional hook to carry their core claims—all of which arise under contracts which identify Minnesota or Delaware as the "exclusive jurisdiction" for resolution of disputes—into federal court, in Tennessee. Specifically, federal jurisdiction over this case hangs from two delicate threads. First, Ms. Jackson alleges that, without Ms. Jackson's consent, Defendant Jacome recorded a teleconference in which Ms. Jackson participated, in purported violation of 18 U.S.C. §

2510, *et seq.* ("the Wiretap Act") (Count I or "the Wiretap Claim"). Second, Mr. Jackson presents an unrelated claim that LeMond Companies and LeMond Composites—while his wife and co-Plaintiff was LeMond Companies' CEO—failed to pay him overtime as required by the Fair Labor Standards Act (Count II or "the FLSA Claim"). Both claims lack merit, and neither is sufficiently related to the core state law claims to permit supplemental jurisdiction. Even if the state law claims did belong in federal court, the forum selection clauses in the governing contracts would nevertheless mandate transfer of the related claims within this case (without the FLSA Claim) to a proper forum.

### A.     Defendants are entitled to summary judgment on the Wiretap Claim.

Defendants are entitled to summary judgment on the Wiretap Claim, because the undisputed facts show that there was no violation. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). In response to a motion for summary judgment, the opposing party may not rest on the allegations in its complaint but must instead "produce by affidavit or otherwise specific facts showing that there is a genuine issue for trial." *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 134 (6th Cir. 1969) (quotation omitted). As a procedural matter, "[a] defendant . . . is not required to respond in the form of an answer before making a motion for summary judgment, which may be

made by a defending party 'at any time.'" *Jones v. U.S. Dep't of Justic*e, 601 F. Supp. 2d 297, 302 (D.D.C. 2009) (quoting Fed. R. Civ. P. 56).

In this case, Ms. Jackson's sole federal claim is an alleged violation of the federal Wiretap Act. Specifically, she alleges that Defendant Jacome recorded a teleconference ("the Lucintel call") without her consent. (Compl. ¶¶ 94–95.) But by its plain language, the Wiretap Act *expressly permits* a party to a conversation to record the discussion— even without the consent of other parties:

> **It shall <u>not</u> be unlawful under this chapter** for a person not acting under color of law to intercept a wire, oral, or electronic communication **where such person is a party to the communication** or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphases added). In other words, "[t]he Wiretap Act is a 'one-party consent' statute, i.e., it is not unlawful under the Act for a person to 'intercept ... electronic communication' if the person 'is [1] a party to the communication or [2] where one of the parties to the communication has given prior consent to such interception.'" *In re Nickelodeon Consumer Privacy Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *13 (D.N.J. July 2, 2014). The undisputed evidence demonstrates that Defendant Jacome was a party to the Lucintel call. By recording the call, he committed no violation of the federal Wiretap Act because the one-party consent exemption was fully satisfied. *See* 18 U.S.C. § 2511(2)(d). This claim therefore fails as a matter of law.

While Ms. Jackson now claims that no one on the Lucintel call was aware of Defendant Jacome's participation, the indisputable facts prove that to be false.

Specifically, Ms. Jackson falsely alleges that "the only people invited to participate in the [Lucintel call] were [Ms. Jackson], Don Naab, a Composites employee, and the Lucintel representatives." (Compl. ¶ 71.)[3] In fact, the documentary record shows that Don Naab sent *both* Defendant Jacome and Ms. Jackson invitations to the call. (*See* JA0029–30 ¶ 3, JA0035–37; JA0073–74 ¶ 2, JA0078–79;JA0161–163.) The invitation clearly indicated that Jacome was invited to the conference call. (*Id.*) When Defendant Jacome accepted this invitation, Don Naab responded "Great!" and "I'll see you on the call. . . ." (JA0029–30 ¶ 3, JA0039; JA0073–74 ¶ 2, JA0081.) Ms. Jackson not only received the invitation, but she accepted the invitation the same day *with a copy to Jacome.* (JA0029–30 ¶ 3, JA0041–43; JA0073–74 ¶ 2, JA0083–85.)

> From: <connie@lemond.cc>
> Date: Thu, Oct 27, 2016 at 6:13 PM
> Subject: Re: Invitation: Market data: Low cost carbon fiber @ Fri Oct 28, 2016 10am - 11am
> (connie@lemond.cc)
> To: Don Naab <dnaab@lemond.cc>
> Cc: alex@lemond.cc, sanjay.mazumdar@lucintel.com
>
>
> Works for me.
>
> Sent from my iPhone

(JA0042.) Later in the day on October 27, Lucintel representative Roy Almaguer sent *another* invitation to the call, again identifying both Ms. Jackson and Defendant Jacome as invitees. (JA0030 ¶ 4, JA0044–45; JA0074 ¶ 3, JA0086–87.) A subsequent reminder sent to all invitees on the morning of October 28 again showed all participants—including Ms.

---

[3]    As noted above, although Ms. Jackson alleges that there was a teleconference with Lucintel in November 2016, no such call occurred. (JA0029 ¶ 2; JA0077 ¶ 14.) The only call with Lucintel was on October 28, 2016. (*Id.*; JA0034 ¶ 14.)

Jackson—that Defendant Jacome would be part of the call. (JA0030–31 ¶ 5, JA0047–48; JA0074 ¶ 4, JA0088–89; JA00166–167.)

Even if Ms. Jackson somehow remained unaware that Defendant Jacome planned to participate in the Lucintel call, other participants *did* know of his participation. For example, Ms. Jackson alleges that she knew Don Naab would be part of the call. (Compl. ¶ 71–72.) And Mr. Naab attests not only that he knew Defendant Jacome planned to participate, but that Defendant Jacome *spoke during the call.* (JA0073–74 ¶ 2, JA0075 ¶ 7.) Both Defendant Jacome and Mr. Naab corroborate this, attesting that Defendant Jacome engaged in "chit-chat" with Lucintel's Almaguer at the beginning of the call and said goodbye at the end. (JA0032 ¶¶ 9–10; JA0075 ¶ 7.) If there were any doubt that the call participants knew of Defendant Jacome's participation, it is resolved by an email that Lucintel's Almaguer sent immediately after the call to Ms. Jackson, Mr. Naab, Defendant Jacome, and others—thanking them "for the time today." (JA0032 ¶ 11, JA0054–55; JA0075 ¶ 8, JA0094–95.) Ms. Jackson responded to all participants, again including Defendant Jacome, to express her thanks for the time on the call. (*See* JA0033 ¶ 12, JA0056–58; JA075-76 ¶ 9, JA0096–97; JA0174.)

From: <connie@lemond.cc>
Date: Fri, Oct 28, 2016 at 7:16 PM
Subject: Re: Call With LeMond Composites and Lucintel
To: Roy Almaguer <roy.almaguer@lucintel.com>
Cc: "dnaab@lemond.cc" <dnaab@lemond.cc>, "alex@lemond.cc" <alex@lemond.cc>, Sanjay Mazumdar <sanjay.mazumdar@lucintel.com>, Frank Swehosky <frank.swehosky@lucintel.com>, Nicolas Wegener <nic@lemond.cc>

Roy,

Thank you and the Lucintel team for the time today.

Please send us your NDA, assuming you have a two way.  Otherwise, we will send our one way and we will go from there.  Please advise on the NDA.

Best,
Connie

(JA0057.) In short, Defendant Jacome was a participant in the Lucintel call—and that fact was known to one or more other participants in the call. He was therefore entirely within his rights to record the call under the Wiretap Act. *Boddie*, 881 F.2d at 268 (noting that the Wiretap Act "privileges a party to a communication to intercept and record that communication without the other party's consent."). Defendant Jacome is entitled to summary judgment on Ms. Jackson's claim under the Wiretap Act.

**B.     The FLSA Claim must be dismissed or severed from this action.**

Count II of Plaintiffs' Complaint asserts Plaintiff Jeffrey Jackson's sole claim—that he was an employee of Defendants LeMond Companies and LeMond Composites and that they failed to pay in accordance with the federal Fair Labor Standards Act. Defendants will strongly dispute this claim at the appropriate time. At this point, the claim must be dismissed or severed because Mr. Jackson and his claim are improperly joined. The Court should either dismiss Mr. Jackson's FLSA Claim without prejudice or sever the claim so that it can proceed on its own.

Rule 20(a)(1) governs joinder of multiple plaintiffs in a single action:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

*See also Worldwide Digital Entm't, LLC v. Woodstone Deli & Sports Grill*, 2014 WL 2442634 at *1 (E.D. Tenn. May 30, 2014). Claims arise out of the same "transaction or occurrence" where the "infringing acts share an aggregate of operative facts." *See Botero v. Commonwealth Limo. Serv. Inc.*, 302 F.R.D. 285, 286 (D. Mass. 2014) (internal quotation

omitted); *see also In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012). "[P]arties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)." 7 Fed. Prac. & Proc. Civ. § 1683 (3d ed.). In that event, Rule 21 "allows the court to correct the improper joinder of parties in one lawsuit," *Kitchen v. Heyns*, 802 F.3d 873, 874 (6th Cir. 2015), by providing that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "The court may also sever any claim against a party." *Id.*

Mr. and Ms. Jackson's claims are unrelated and do not arise out of the "same transaction or occurrence" because the alleged infringing acts do not share an aggregate of operative facts. Indeed, apart from the case caption and introduction, Mr. Jackson's name appears only in Complaint Paragraph 39 (alleging employment by Defendants LeMond Companies and LeMond Composites), 48–55 (alleging FLSA violations), and 101–07 (the FLSA Claim). The only allegation involving both Ms. Jackson and Mr. Jackson is the contention that Ms. Jackson (allegedly CEO of one of the companies that supposedly hired, employed, and underpaid Mr. Jackson) once complained about the failure to pay him. (Compl. ¶ 55.) Mr. Jackson does not figure in *any* of the allegations supporting Ms. Jackson's contract, wiretap, and other claims that form the core of this case.

As a result, Mr. Jackson's FLSA claims do not share the requisite "aggregate of operative facts" with the other claims in the Complaint.[4] The only arguable connection between Mr. Jackson's and Ms. Jackson's claims is that they allegedly shared a common

---

[4] It is nonsensical for Ms. Jackson to join in Mr. Jackson's claim given that she claims to have been the CEO of LeMond Companies and responsible for all hiring during the time in which Mr. Jackson alleges that LeMond Companies was violating his FLSA rights.

employer. But Courts routinely find misjoinder or decline to permit joinder even where two or more employees bring similar claims against a single employer under the same statute—none of which apply here. *See, e.g., Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 325 (S.D. Ohio 2002) (denying motion to join second employee as a plaintiff on employment discrimination claims against common employer where plaintiffs held different jobs and had different supervisors); *Rhodes v. Target Corp.*, 313 F.R.D. 656, 659 (M.D. Fla 2016) (severing USERRA claims asserted by former Target employees where employees held different positions, had different work histories, and were allegedly terminated for different reasons); *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 424 (E.D. La. 2016) (severing employment discrimination claims where plaintiffs "had different job titles and work histories [and] experienced different episodes of alleged discrimination, harassment and retaliation by different supervisors on dates that were months apart").

Ms. Jackson and Mr. Jackson allege that they had different jobs for different employers with different pay structures on different terms. Ms. Jackson claims that she was an "employee of [LeMond Companies]" and that she was paid a salary. (Compl. ¶ 36.) Mr. Jackson, by contrast, alleges that he was a "joint employee" of *both* LeMond Companies and LeMond Composites and that he was paid no wages at all. (*Id.* ¶¶ 39, 53.) With respect to job responsibilities, the Operating Agreement and Employment Agreement both refer to Ms. Jackson's title as CEO. (JA0113 § A.1; JA00127-128 § 3.3(b).) In contrast, Mr. Jackson alleges that his responsibilities were quite different from that of a CEO, including supervising contractors, performing renovation work, and negotiating with vendors. (Compl. ¶¶ 49–50.) Ms. and Mr. Jackson also allege entirely different

relationships with their purported employers, which support entirely different employment claims. Ms. Jackson's employment-related claims are based on purported breaches of *written agreements* with LeMond Companies. (*See, e.g., id.* ¶¶ 56, 68, 79, 84–8, 113–121, 133–137.) Mr. Jackson does not allege having had *any* written employment agreement with either of his purported employers but instead alleges he was not paid minimum wage or overtime. (*Id.* ¶ 53.) Ms. and Mr. Jackson's attempt to join their claims falls far short of reaching the standard necessary to show that their claims arise out of the "same transaction or occurrence" as required for joinder under Rule 20(a)(1)(A).

In addition to the lack of any factual overlap, there are no common questions of law in Mr. and Ms. Jackson's claims. As noted above, Ms. Jackson's employment-related claims involve alleged violations of obligations purportedly arising from written agreements. Mr. Jackson's claim is statutory and focuses on claims that he was not paid in accordance with minimum wage and overtime rules. Unlike some of Ms. Jackson's claims, Mr. Jackson's FLSA Claim is not aimed at the actions of any of the individual Defendants, but instead focuses only on purported violations by LeMond Companies and LeMond Composites. (*Compare* Compl. ¶¶ 133–37 (alleging that individual Defendant Greg LeMond wrongfully removed Ms. Jackson from her position in violation of the Operating Agreement), *with id.* ¶¶ 99–107 (repeatedly referring to LeMond Companies and LeMond Composites as the culprits of purported FLSA violations).)

The different bases for and targets of Mr. and Ms. Jackson's claims lead to disparate legal questions. The relevant questions to Mr. Jackson's FLSA Claim include whether: (1) he was an employee covered by the FLSA; (2) he worked the hours he alleges;

(3) he was entitled to the minimum wage or overtime; and (4) his purported employers failed to pay him wages to which he was entitled. But the answers to these questions will have literally no impact upon Ms. Jackson's case, which turns on questions relating to (1) the relative rights and responsibilities of the parties under their written agreements; (2) whether the Defendants breached any contractual or common law duties; and (3) whether Ms. Jackson was wrongfully removed from her position at LeMond Companies.

There is thus no factual or legal overlap between Mr. Jackson's FLSA Claim and Ms. Jackson's claims, and the claims are not properly joined in a single lawsuit. Upon a finding of misjoinder, the Court has the discretion to "drop" the misjoined party "on just terms" (typically, dismissal without prejudice) or to sever that party's claims. Fed. R. Civ. P. 21; *see Stojcevski v. Cty. of Macomb*, 143 F. Supp. 3d 675, 683 (E.D. Mich. 2015), reconsideration denied, No. CV 15-11019, 2016 WL 2893016 (E.D. Mich. May 18, 2016). Because Mr. Jackson's claim is aimed at only two of the five named Defendants, dismissing his claims without prejudice would be appropriate here. *See Stojcevski*, 143 F. Supp. at 683 (concluding that dismissal without prejudice was most efficient in a case with multiple defendants because it would allow the plaintiff to file "a separate claim that identifies the particular defendants that he believes are liable for his individual injuries"). To the extent that the Court severs, rather than drops, Mr. Jackson and his claim, Defendants request that the Court dismiss the individual Defendants (Greg LeMond, Nicolas Wegener, and Alex Jacome) from the severed FLSA case because the FLSA Claim has not been asserted against those Defendants.

## II. The Court lacks supplemental jurisdiction over the state law claims.

### A. In the absence of live federal claims, the state law claims (Counts III–VII) should be dismissed under 28 U.S.C. § 1367(c)(3).

If the Court dismisses or severs the federal claims, as requested above, then it should also dismiss the non-federal claims as matter of course. The only basis for this Court's subject matter jurisdiction is 28 U.S.C. § 1331 (federal question jurisdiction), purportedly triggered by the Plaintiffs' two federal claims. (Compl. ¶ 8.) Upon dismissal of those claims, "the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims," but "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). This lawsuit is still in its infancy. Defendants have not even answered, and the Court has yet to invest significant judicial resources. In these circumstances, judicial economy and comity favor dismissal of the remaining claims.

### B. Even if a federal claim survives, the state law claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Even if the Court were to retain one or both of Plaintiffs' federal claims, the state law claims (Counts III–VII) must be dismissed because the Court lacks supplemental jurisdiction over the state law claims. A federal court lacks authority to exercise jurisdiction over state law claims unless the state and federal claims "derive from a

common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "This requirement is met when state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583 (6th Cir. 2011). Neither of the federal claims arises from the same contract, dispute, or transaction as the state law claims. As discussed above, Mr. Jackson's FLSA Claim (Count II) has zero factual or legal questions in common with Ms. Jackson's various state law claims. And Ms. Jackson's Wiretap Claim turns on whether a recording was made by a participant to the Lucintel call, which shares no common nucleus of operative facts with her various state-law contract and other claims. As a constitutional matter, the state law claims are not part of the same "case," and the Court has no option but to dismiss those claims for lack of subject matter jurisdiction.

Even if this Court had the power to hear Ms. Jackson's unrelated state law claims, and it does not, the exercise of that power "is discretionary and includes consideration of such factors as judicial economy, convenience, and fairness to the litigants." *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 187 (6th Cir. 1992). All of those factors militate against the exercise of pendent jurisdiction. First, there is no doubt that the parties agreed to litigate in a different forum any dispute over the two contracts Ms. Jackson seeks to enforce. Ms. Jackson seeks to enforce the Operating Agreement, whose "Venue" clause mandates that any litigation related to the Agreement may proceed "only" in Minnesota. (JA0144-145 § 12.8.) She further seeks to enforce the Employment Agreement, which requires any litigation to proceed either in Minnesota or Delaware. (JA0117 § 25.) Ms. Jackson thus twice agreed to pursue any claims in a forum other than

this Court and she therefore cannot reasonably argue that dismissal in favor of an agreed upon forum is inconvenient or unfair. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013) ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

Notably, there is already litigation pending between the LeMond entities and Ms. Jackson in Minnesota state court. (JA0003-4 ¶ 7, JA0005-28.) That suit presents the same contractual questions at issue in the present suit, and Ms. Jackson has already appeared in that action through counsel. (*Id.*; JA0004 ¶ 9.) Given this, and given the very early stage of the instant lawsuit, dismissing the present case would *enhance*—not harm—judicial economy. "Two considerations exist with regard to judicial economy: (1) the extent to which the federal court has expended time or resources on the state law claims, and (2) the degree to which a state court would be required to replicate the federal court's efforts." *WHS Entm't Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 954 (M.D. Tenn. 1998). Here, as in *WHS*, "the Court has not expended any time considering the state law issues presented by the Plaintiffs, and thus there would be no waste of judicial resources if the state courts were to take up these claims." *Id.* For these reasons, even if the Court determines that it *could* exercise jurisdiction over Ms. Jackson's state law claims, it should exercise its discretion to dismiss those claims without prejudice.

### III. The Court should also dismiss Ms. Jackson's state law claims under Rule 12(b)(6).

#### A. The forum selection clause mandates dismissal under Rule 12(b)(6).

As this Court has recently explained, "[o]n a motion to dismiss under Rule 12(b)(6) to enforce a forum selection clause, the Court 'only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed.'" *Angiosystems, Inc. v. Worldwide Innovations & Techs., Inc.*, No. 1:15-CV-78, 2016 WL 919001, at *3 (E.D. Tenn. Mar. 4, 2016) (quoting *May v. Ticketmaster Entm't, LLC*, No. 3:10-CV00760, 2010 WL 4024257, at *4 (M.D. Tenn. Oct. 13, 2010)).

"The party opposing [a] forum selection clause bears the burden of showing that the clause should not be enforced," and a "forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). The following factors determine a forum selection clause's enforceability: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.*

First, while she has entirely disregarded the contractual forum selection clauses, Ms. Jackson has made no allegation that those provisions were obtained by fraud, duress, or other unconscionable means. Her Complaint purportedly seeks relief for a violation of the Operating Agreement by Defendant Greg LeMond (*see* Compl. ¶ 137), indicating that she views that agreement as enforceable. *See Lefkowitz v. McGraw-Hill Companies, Inc.*, No. CIV.A. 13-1661, 2013 WL 3061549, at *4 (E.D. Pa. June 19, 2013) ("Plaintiff cannot seek

to enforce those contract terms beneficial to him while glossing over those that impose requirements he would rather not follow."). And although Ms. Jackson alleges that her agreement to certain provisions of the Non-Compete Agreement encompassed by the Employment Agreement was obtained through fraud or coercion (*see* Compl. ¶¶ 111, 142), she does not challenge the validity of the Employment Agreement in general or the forum selection clause in particular. In fact, she specifically alleges that the Employment Agreement "is an enforceable agreement." (*Id.* ¶ 113), and she seeks declaratory relief only as to portions of the Non-Compete Agreement (*See id.* ¶¶ 111–112).

Second, there is no reason to think that a Minnesota court would "ineffectively or unfairly" handle this lawsuit. "Different or less favorable foreign law or procedure alone does not satisfy this prong," and the Sixth Circuit has held that Courts in various foreign jurisdiction such as Gibraltar, England, Germany, and Brazil are satisfactory forums. *See Wong*, 589 F.3d at 829. Minnesota courts are entitled to no less respect.

Third, to avoid a forum selection clause, "the plaintiff must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable," and "[t]his finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Id.* Ms. Jackson cannot make such a showing with respect to litigating her claims in Minnesota, particularly since she has expressly agreed to waive "any claim that any proceeding brought in accordance with [the Operating Agreement's forum selection clause] has been brought in an inconvenient forum or that the venue of that proceeding is improper." (JA0145 § 12.8). Because there is a pending Minnesota lawsuit between the parties, relating to the very same agreements at issue

here, and in which Ms. Jackson's counsel has already appeared, enforcing the forum selection clause will not result in any delay of the claims that Ms. Jackson wishes to make.

Finally, Ms. Jackson cannot choose a new forum by pleading claims that sound in tort rather than contract. Bringing claims as torts, "instead of claims involving breach of contract, does not suffice to shelter them from the reach of a forum-selection clause." *Micropower Grp. v. Ametek, Inc.*, 953 F. Supp. 2d 801, 808 (S.D. Ohio 2013). Instead, "courts have generally held that when the relationship between the parties is contractual, the creative pleading of alternative, non-contractual claims does not suffice to circumvent the forum-selection clause if the forum selection clause is broad enough to include them." *Id.*; *see also Kresser v. Advanced Tactical Armament Concepts, LLC*, No. 3:16-CV-255, 2016 WL 4991596, at *3 (E.D. Tenn. Sept. 16, 2016); *Angiosystems, Inc.*, 2016 WL 919001, at *4.

All of Ms. Jackson's state law claims arise from or are related to the relevant agreements and are therefore covered. To begin, Counts III (declaratory judgment), IV (breach of contract), and VII (wrongful removal) all arise directly from alleged violations of the Operating Agreement or the Employment Agreement (of which the "Non-Compete Agreement" is a part). (*See, e.g.,* Compl. ¶¶ 111, 119, 137.) Counts V and VI, both of which allege breaches of fiduciary duties, depend on the existence of the contractual relationship formed in the Operating Agreement and therefore are encompassed within its forum selection clause. *Kresser*, 2016 WL 4991596, at *3 ("Tort claims . . . can be encompassed by a contractual forum-selection clause if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."). Similarly,

Count VII (fraud) relates specifically to the Non-Compete Provisions of the Employment Agreement and is therefore clearly "related to" the Employment Agreement.

For all of these reasons, the forum selection clauses are valid and applicable to Ms. Jackson's state law claims, and those claims should therefore be dismissed under Rule 12(b)(6). *Angiosystems, Inc.*, 2016 WL 919001, at *3 (if a forum selection clause is "enforceable and applicable . . . then the suit should be dismissed").

**B.     Counts V and VI should also be dismissed under Rule 12(b)(6) because they are improper derivative claims.**

Under the governing Delaware law,[5] Ms. Jackson's claims related to alleged breaches of fiduciary duties (Counts V and VI) are procedurally barred derivative claims. This determination turns solely on two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). A plaintiff's claims are derivative where the alleged injury would be felt by all owners. *Agostino v. Hicks*, 845 A.2d 1110, 1123 & n.60 (Del Ch. 2004); *Litman v. Prudential-Bache Properties, Inc.*, 611 A.2d 12, 16 (Del. Ch. 1992) (claims derivative where "defendants' misconduct damaged plaintiffs only to the extent of their proportionate interest in the Partnership").

Ms. Jackson does not allege that she suffered any harm apart from the harm shared by all members of the company, and she repeatedly alleges that *the company* was injured.

---

[5]     The Operating Agreement provides that "[t]he laws of the state of Delaware . . . govern all adversarial proceedings arising out of this Agreement." (JA0144 § 12.7.)

In Count V, she alleges that Defendant LeMond "breached [his] fiduciary duty by using *the Company's* funds for his personal gain . . . , using the *Company's funds* to purchase office furniture for his son's business, and transferring *Company funds*." (Compl. ¶ 124 (emphasis added).) She also alleges that "Defendants LeMond and Wegener breached their fiduciary duty of loyalty by not taking reasonable steps to protect *the Company's* confidential technology and financial information." (*Id.* ¶ 125 (emphasis added).) In Count VI, she alleges that "Defendant LeMond . . . violated his fiduciary duty of care by executing the Solve Contract and committing *the Company* to pay a monthly fee." (*Id.* ¶ 130 (emphasis added).)

Defendants deny that Mr. LeMond or anyone else committed misconduct of any sort, and they will prove falsity of any such contentions in the proper forum. For present purposes, however, all of these claims involved an alleged harm suffered by *the company*, and in each case *the company* is entitled to any recovery. *See, e.g., Sykes v. Meyler*, 453 F. Supp. 2d 936, 941 (E.D. Va. 2006) ("Delaware courts have consistently held that breaches of the fiduciary duty of care which devalue a corporation's stock are wrongs against the corporation that must be recovered by the corporation.") As a result, Counts V and VI are derivative claims under Delaware law. Such derivative claims by individual members of an LLC are allowed *only* where members with authority to bring an action by the company "have refused to bring the action or if an effort to cause those . . . members to bring the action is not likely to succeed." Del. Code tit 6 § 18-1001. Such allegations (refusal or futility) must be pled with particularity in the plaintiff's complaint. Del. Code. tit 6 §18-1003. Because the Complaint includes no allegations that members with authority have

refused to bring an action and no reasons that such an effort is unlikely to succeed, Counts V and VI should be dismissed. *See Sykes,* 453 F. Supp. 2d at 941.

## IV. In the alternative, all of Ms. Jackson's claims should be transferred to the District of Minnesota.

In the alternative, and to the extent that the Court concludes that some basis for federal jurisdiction remains, Defendants respectfully request that the court transfer Counts I and III–VII to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), for the same reasons presented above for dismissal. *See Kresser,* 2016 WL 4991596, at *2 (considering alternative motions under 28 U.S.C. § 1404(a) and Rule 12(b)(6) based on forum selection clause).

In considering whether to transfer all of Ms. Jackson's claims, the Court should apply the 1404(a) analysis and "consider the private interests of the parties, the public interest in litigating the case in the chosen forum, and the interests of judicial economy implicated by a potential severance." *Kresser,* 2016 WL 4991596, at *5. As discussed above, the private factors must weigh in favor of a Minnesota forum, where the parties expressly have broadly agreed to litigate disputes. And, as in *Kresser,* the public factors do not weigh heavily in either direction because this dispute is "unlikely to have broader effect on the public at large." *Id.* Finally, again like *Kresser,* "interests of judicial economy strongly favor a transfer," because it would be costly for two cases to proceed where one could include all of the parties' disputes. *Id.* (citing *Family Wireless #1, LLC v. Auto. Techs., Inc.,* No. 15-11215, 2015 WL 5142350, at *7 (E.D. Mich. Sept. 1, 2015) (transferring an entire action for purposes of judicial economy where some plaintiffs were subject to forum-selection clauses and others were not)).

## CONCLUSION

At its core, this case is a dispute between business partners who repeatedly agreed to litigate in a different forum. The Court should dismiss or sever Mr. Jackson's lone and unrelated FLSA Claim and grant summary judgment as to Ms. Jackson's non-starter Wiretap Claim, leaving nothing left but state law claims that have no business in this Court. But even if the Court does not dispose of the federal claims, Ms. Jackson's claims should nonetheless be dismissed or transferred pursuant to the parties' clear agreement to litigate their disputes elsewhere.


Dated: February 8, 2017                    **BERNSTEIN, STAIR & MCADAMS LLP**

**/s/ W. TYLER CHASTAIN**
Daryl R. Fansler, TN No 010219
W. Tyler Chastain, TN No. 016029
116 Agnes Road
Knoxville, TN 37919
dfansler@bsmlaw.com
wtylerc@bsmlaw.com
(865) 546-8030

**GREENE ESPEL PLLP**

*Motions for admission pro hac vice pending*
Lawrence M. Shapiro, P.A., MN No. 0130886
Mark L. Johnson, MN No. 0345520
Karl C. Procaccini, MN No. 0391369
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
lshapiro@greeneespel.com
mjohnson@greeneespel.com
kprocaccini@greeneespel.com
(612) 373-0830

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 8th day of February, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

W. TYLER CHASTAIN
/s W. TYLER CHASTAIN
(Tennessee BPR No. 016029)
