IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| Connie Jackson and Jeffrey Jackson, | | |
| Plaintiffs, | | |
| v. | | Civil Action No. 3:16-cv-716 |
| LeMond Companies, LLC, LeMond Composites, LLC, Greg LeMond, Nicolas Wegener, Alex Jacome, | | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TO TRANSFER, AND FOR PARTIAL SUMMARY JUDGMENT

Defendants LeMond Companies, LLC, LeMond Composites, LLC, Greg LeMond, Nicolas Wegener, and Alex Jacome respectfully file their Memorandum in Support of Defendants' Motion to Dismiss, to Transfer, and for Partial Summary Judgment ("Motion") as to the claims asserted by Plaintiffs Connie Jackson and Jeffrey Jackson.

## INTRODUCTION

Even after dramatically revising their allegations, Plaintiffs' claims remain entirely without merit and in the wrong forum. This lawsuit does not belong in Tennessee. The core of this case is a dispute between former business associates who agreed in writing that they would litigate any disputes in Minnesota. The relevant forum selection agreements apply not only to the claims of Plaintiff Connie Jackson, who executed them, but also to the claims of her husband and co-Plaintiff, Jeffrey Jackson. The Court should therefore dismiss the lawsuit without prejudice under Rule 12(b)(6). Following dismissal,

Mr. and Mrs. Jackson could pursue their claims within the lawsuit between LeMond Companies and Mrs. Jackson that is already pending in Minnesota. (*See* JA0265-266.)

Alternatively, the Court may transfer this case to the District of Minnesota under 28 U.S.C. § 1404(a). That court could consider such preliminary issues as Defendants' motion to dismiss Plaintiffs' Wiretap Act claim under Rules 12(b)(6) and Rule 56. And if the federal court in Minnesota determines that jurisdiction exists over this action, then for the sake of judicial economy Defendants could consider dismissing the pending case in Minnesota state court and joining their claims to the Minnesota federal action.

If this Court retains the case, it should nevertheless dismiss Plaintiffs' Wiretap Act claim under Rules 12(b)(6) and 56. Plaintiffs do not and cannot allege any violation because Defendant Jacome—who allegedly violated the Wiretap Act by recording certain conversations—was a known party to the alleged conversations. Under the statute's plain language, this is fatal to Plaintiffs' claim. Dismissal would narrow the scope of future discovery and result in the dismissal of the sole claim against Defendant Jacome, who has no conceivable liability.

## FACTUAL BACKGROUND

### I. General background and the relevant forum selection clauses

Defendants LeMond Companies, LLC ("LeMond Companies") and LeMond Composites, LLC ("LeMond Composites") are in the business of developing, producing, and selling carbon fiber. (Am. Compl. [Doc. No. 25] ¶¶ 31, 38.) Plaintiff Connie Jackson ("Mrs. Jackson") claims to be the "inventor" of a patented process for producing carbon

fiber ("the Patented Technology"). (*Id.* ¶ 24, 150.) The patents covering that process are held by Oak Ridge National Laboratory ("ORNL"). (*Id.* ¶ 24.)

LeMond Companies holds a license from ORNL to produce and sell carbon fiber using the Patented Technology ("the License"). (*Id.* ¶ 47.) In connection with and following LeMond Companies' acquisition of the License, Mrs. Jackson represented to Defendants that she alone possessed the confidential information, trade secrets, and know-how necessary to execute the Patented Technology described in the License, and that she was therefore indispensable to the success of LeMond Companies' business.

Plaintiffs allege no agreement that requires or permits litigation in Tennessee. But during her relationship with Defendants, Mrs. Jackson repeatedly agreed to litigate any and all disputes with Defendants *outside of Tennessee*. To begin, on January 10, 2016, Mrs. Jackson executed an Operating Agreement related to LeMond Composites, LLC ("the Composites Operating Agreement") in which she agreed that the "exclusive jurisdiction" for any legal proceedings would be Minnesota:

> **Venue**. If either party brings against the other party any proceeding arising out of this Agreement or arising out of disclosure or use of Confidential Information, that party may bring that proceeding only in the United States District Court for the District of Minnesota or in any state court of Minnesota sitting in Hennepin County, Minnesota, and each party hereby submits to the exclusive jurisdiction of those courts for purposes of any such proceeding. Each party hereby waives any claim that any proceeding brought in accordance with this Section has been brought in an inconvenient forum or that the venue of that proceeding is improper.

(JA0217 § 12.)

The next month, on February 29, 2016, Mrs. Jackson, Mr. LeMond, and Defendant Nicolas Wegener, signed an Operating Agreement related to LeMond Companies, LLC

("Companies Operating Agreement"). (JA0229–264.) That agreement contained an identical "Venue" provision to that in the Composites Operating Agreement quoted above. (JA0254–255 § 12.8.)

On or about March 15, 2016, LeMond Composites became a wholly owned subsidiary of LeMond Companies. (JA0191 ¶ 4.) Thereafter, on October 11, 2016, Mrs. Jackson, Mr. LeMond, and Mr. Wegener signed a "Second Amended Operating Agreement" related to Defendant LeMond Companies, LLC ("Amended Companies Operating Agreement"). (JA0119–146.) As with the Composites Operating Agreement and the first Companies Operating Agreement, this agreement again provided that Mrs. Jackson would bring "any proceeding arising out of this Agreement or arising out of disclosure or use of Confidential Information" in Minnesota. (JA0144–145 § 12.8.)

Ten days later, Mrs. Jackson consented, *for the fourth and fifth times*, to litigate disputes with Defendants in a forum other than Tennessee. Specifically, on October 21, 2016, Mrs. Jackson executed an Executive Employee Employment Agreement ("Employment Agreement") and a Confidentiality, Noncompetition, and Nonsolicitation Agreement ("Confidentiality Agreement"). (JA0112–118; JA155–160.) In both of those contracts, she agreed to litigate all related disputes in either Minnesota or Delaware:

> Any legal proceedings related to this Agreement shall be brought in Delaware in the Sussex County District Court or the Delaware District of the U.S. District Court, and each of the parties hereto hereby consents to the exclusive jurisdiction of the Minnesota state and federal courts for this purpose. The parties acknowledge the existence of sufficient contacts to the State of Delaware and Sussex County to confer jurisdiction upon these courts.

(JA0117 § 25; JA0160 § 19.)

Mrs. Jackson's original Complaint contended that the Amended Companies Operating Agreement and the Employment Agreement were valid and should be enforced in her favor. (*See* Compl. [Doc. No. 1] ¶¶ 113, 137). Perhaps recognizing that this position would compel dismissal in favor of another forum, Plaintiffs amended their complaint to allege just the opposite—that both of those agreements are invalid because they were the result of fraud or duress. (*See, e.g.*, Am. Compl. ¶¶ 104, 164, 192.) Notwithstanding the about face, Mrs. Jackson still does not allege that either the Composites Operating Agreement or the Companies Operating Agreement were invalid. And she agreed in each of those contracts to litigate in Minnesota, not Tennessee.

## II.   Jeffrey Jackson

Plaintiff Jeffrey Jackson is Mrs. Jackson's husband. (*See* Am. Compl. ¶ 29.) He alleges that he was an employee of LeMond Companies and LeMond Composites. (*Id.*¶ 49.) He further alleges that he was not paid as required under the Fair Labor Standards Act ("FLSA"). (*Id.* ¶¶ 128–139.) In the original Complaint, the only allegation connecting Mrs. Jackson's and Mr. Jeffrey Jackson's allegations was a general assertion that Mrs. Jackson had complained about the alleged lack of payment. (*See* Compl. ¶ 55.) The Amended Complaint, by contrast, alleges for the first time that Mrs. Jackson was terminated in direct retaliation for complaining that her husband was not being paid appropriately. (Am. Compl. ¶¶ 13, 140–146.) It further suggests for the first time that Mr. Jackson was a party to conversations that were allegedly recorded by Mr. Jacome and that Mr. Jackson therefore has his own claims under the Wiretap Act. (Am. Compl. ¶¶ 93, 123, 127.) If the Court accepts these allegations as true for purposes of this motion, then (as

discussed below) Mr. Jackson's claims are subject to Mrs. Jackson's forum selection contracts, and the entire case must be dismissed in favor of another forum or transferred.

## III.   The Lucintel call and recording

Mrs. Jackson alleges that there was a teleconference with the research firm Lucintel in November 2016 (Am. Compl. ¶ 88), but no such call occurred. (JA0029 ¶ 2; JA0077 ¶ 14.) There *was* a call with Lucintel on October 28, 2016 ("the Lucintel call"). (JA0029–32 ¶¶ 3–10; JA0073–75 ¶¶ 2–7; JA0179 ¶ 3.) One party to that call, Defendant Alex Jacome, recorded the substantive portions of the discussion. (JA0031–32 ¶¶ 8–9.) Mr. Jacome was openly invited to the call, and multiple parties were aware of his presence on the line. (JA0029-31 ¶¶ 3–5, JA0035–49; JA0073–74 ¶¶ 2–4, JA0078–90; JA0179 ¶¶ 1–2, 4.) Mr. Jacome recorded the call on his own initiative, as part of his longstanding use of recordings to help him process the content of verbal communications. (JA0031 ¶ 8.)

In the Amended Complaint, Plaintiffs have added allegations that Mr. Jacome recorded other conversations to which Mrs. or Mr. Jackson were parties. (Am. Compl. ¶¶ 83–84, 93.) But, as discussed below, a Wiretap Act claim cannot proceed if the person accused of unlawful recording was himself a party to the communications. Despite this, the Amended Complaint affirmatively alleges that Mr. Jacome traveled to California to participate in at least one of the meetings he allegedly recorded. (*Id.* ¶ 83.) The Amended Complaint is silent as to whether he was a party to the other conversations he allegedly recorded. (*See id.*) As discussed below, this is fatal to the claim.

## IV. Termination of Mrs. Jackson and procedural history

On December 9, 2016, LeMond Companies terminated Mrs. Jackson's employment and canceled the Contribution Agreement due to various breaches of her contractual obligations. Shortly thereafter, LeMond Companies learned that Mrs. Jackson was engaging in conduct that violated her post-employment duties. Discussions between counsel ensued. LeMond Companies made it clear that it was prepared to commence litigation but preferred first trying to resolve this dispute through mediation. (JA0001 ¶ 2.) Despite Mrs. Jackson's attorneys' repeated representations that she intended to mediate, Plaintiffs quietly filed this lawsuit on December 30, 2016. (JA0002–4 ¶¶ 4–6, 8.) Mrs. Jackson's counsel first informed Defendants' counsel of this filing on January 3, 2017, at which point LeMond Companies provided a courtesy copy of a Complaint in Minnesota litigation. (JA0003–4 ¶ 7.)

Defendants responded to Plaintiffs' original Complaint with a Motion to Dismiss and for Partial Summary Judgment. Plaintiffs mooted that motion by filing the Amended Complaint. Defendants now seek dismissal of the Amended Complaint under Rule 12(b)(6)—or alternatively transfer under 28 U.S.C. § 1404(a)—and dismissal of Plaintiffs' Wiretap Act claim under Rules 12(b)(6) and Rule 56.

## ARGUMENT

## I. The Court should dismiss the Amended Complaint under Rule 12(b)(6).

As this Court has recently explained, "[o]n a motion to dismiss under Rule 12(b)(6) to enforce a forum selection clause, the Court 'only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be

dismissed.'" *Angiosystems, Inc. v. Worldwide Innovations & Techs., Inc.*, No. 1:15-CV-78, 2016 WL 919001, at *3 (E.D. Tenn. Mar. 4, 2016) (quoting *May v. Ticketmaster Entm't, LLC*, No. 3:10-CV00760, 2010 WL 4024257, at *4 (M.D. Tenn. Oct. 13, 2010)). The multiple forum selections clauses here are both enforceable and applicable, and this action should therefore be dismissed.

### A. The forum selection clauses are enforceable.

"The party opposing [a] forum selection clause bears the burden of showing that the clause should not be enforced," and a "forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). The following factors determine enforceability: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* Plaintiffs cannot meet their burden.

Any attempt by Plaintiffs to show fraud or duress must fail for at least four reasons. *First,* the claim in the Amended Complaint that Defendants coerced or fraudulently induced Mrs. Jackson to execute two agreements containing forum selections clauses directly contradicts allegations in the original Complaint and should therefore be stricken. Specifically, the original Complaint treated the Amended Operating Agreement as enforceable. (*See, e.g.*, Compl. ¶ 137 (purporting to seek enforcement of the Amended Operating Agreement).) In order to evade the forum-selection provision, the Amended Complaint directly contradicts this by asking the Court to treat the Amended Operating

Agreement as unenforceable or void based upon fraud or duress. (*See, e.g.,* Am. Compl. ¶ 192.) Similarly, the original Complaint plainly alleged that the Employment Agreement "is an enforceable contract." (Compl. ¶ 114.) Again, the Amended Complaint now contradicts this by asserting that the Employment Agreement is unenforceable and "void due to fraud." (*See, e.g.,* Am. Compl. ¶¶ 104, 164.) These new contradictory allegations should be stricken, and the Court should enforce the forum-selection provisions in accordance with Plaintiffs' original claim that these contracts were valid.

This Court is empowered to strike allegations in the Amended Complaint that contradict the allegations in the initial Complaint. *See, e.g., Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325–26 (Fed. Cir. 1998) (affirming district court decision striking "changed and inconsistent" factual allegations in amended complaint that "exceeded permissible adjustment of factual allegations"); *Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 26 (D.D.C. 2015) (district court has authority to strike allegations that have changed between the initial complaint and the amended complaint); *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 1002-03 (6th Cir. 2009) (citing *Bradley* and affirming district court's denial of motion to amend complaint while describing the proposed amended complaint as "a thinly veiled tactical maneuver to essentially refute [the plaintiff's] prior allegations"). If the new allegations of fraudulent inducement and coercion are stricken, then there is simply no basis for the Court to decline to enforce the forum selection clauses in those agreements.

*Second*, even if the Amended Complaint's fraud and duress allegations were fully credited, the forum selection clauses would still govern. To start, in the instances where

Plaintiffs have asserted fraud and duress, they have made no particularized allegation that the *forum selections provisions themselves* were obtained by improper means. The Sixth Circuit has repeatedly held that "general claims of fraud . . . do not suffice to invalidate [a] forum selection clause." *Wong*, 589 F.3d at 828 (quoting *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006)). In other words,

> unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to *inclusion of that clause in a contract*, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.

*Moses v. Bus. Card Express*, 929 F.2d 1131 (6th Cir. 1991); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) ("[A] forum-selection clause in a contract is not enforceable *if the inclusion of that clause in the contract* was the product of fraud or coercion.") (emphasis added); *Zaklit v. Glob. Linguist Sols.*, LLC, No. 1:14CV314 JCC/JFA, 2014 WL 3109804, at *8 (E.D. Va. July 8, 2014) (collecting cases).

The allegations in the Amended Complaint fall short because they lack any particularized allegations of fraud or duress *related to the forum selection clauses themselves*. With respect to the Employment Agreement and the Confidentiality Agreement, Plaintiffs do not allege that Mrs. Jackson was coerced or fraudulently induced to execute the forum selection clause. Rather, they repeatedly and specifically allege that she was induced to sign *non-competition provisions* contained within the Confidentiality Agreement. (Am. Compl. ¶¶ 150–151.) There are no allegations that *the forum selection clauses* in either the Employment Agreement or the Confidentiality Agreement were the result of fraud or misrepresentation. As for the Amended Companies Operating Agreement, Plaintiffs present only general allegations that Mrs. Jackson was induced or

coerced to sign the agreement as a whole. (*See* Am. Compl. ¶¶ 153–160). These assertions lack any allegation that *inclusion of the forum selection clause itself* was the result of fraud or coercion. *See Preferred Capital*, 453 F.3d at 722. As a result, those allegations cannot be used to meet Plaintiffs' burden to avoid application of the forum selection provisions. *Id*.

Moreover, even if Plaintiffs had made specific allegations related to the forum selection clauses, such allegations would ring hollow in light of the fact that Mrs. Jackson signed similar (or identical) provisions twice in the past—without protest or complaint, with the same business partners, and related to the same subject matter—each time expressly agreeing to a Minnesota forum. *Cf. Numed Techs., Inc. v. Bibbs*, No. 09-2277-JPM-CGC, 2009 WL 10665209, at *3 (W.D. Tenn. Sept. 1, 2009) ("It was reasonable to assume a forum selection clause would be present in the amended employment agreements based on the inclusion of a similar provision in the original agreements.").

*Third*, even if the forum selection clauses in the Amended Operating Agreement, the Employment Agreement, and the Confidentiality Agreement were somehow invalid or inapplicable, this dispute would *still* be governed by a valid forum selection clause in *another* agreement that Plaintiff does not challenge. The Composites Operating Agreement and the original Companies Operating Agreement contain nearly identical forum provisions to that in the Amended Companies Operating Agreement.[1] (JA0144-145

---

[1] The agreements that Mrs. Jackson signed are "central" to Plaintiffs' claims and can therefore appropriately be considered in this Rule 12(b)(6) motion, without converting it to a Rule 56 motion, whether or not they are referred to in the Amended Complaint. *See, e.g., Harris v. TD Ameritrade, Inc.*, No. 4:14-CV-0046, 2015 WL 64880, at *3 (E.D. Tenn. Jan. 5, 2015) (considering agreement not referred to in complaint but central to claims and noting that "[t]he Sixth Circuit takes a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)") (quotations omitted).

§ 12.8; JA0217 § 12; JA0254-255 § 12.8.) Even if the later agreements were somehow invalidated, that would only mean that an earlier forum-selection clause governs. And there is no allegation in the Amended Complaint that Mrs. Jackson was coerced or fraudulently induced to execute any earlier agreements. In other words, even if the Amended Companies Operating Agreement were *entirely disregarded*, the original Companies Operating Agreement would still control and compel litigation in Minnesota.

*Fourth*, Plaintiffs attempt to have it both ways—seeking to enforce the contractual provisions they like while ignoring the provisions they dislike. This is improper. A "Plaintiff cannot seek to enforce those contract terms beneficial to him while glossing over those that impose requirements he would rather not follow." *Lefkowitz v. McGraw-Hill Cos., Inc.*, No. CIV.A. 13-1661, 2013 WL 3061549, at *4 (E.D. Pa. June 19, 2013). Plaintiffs ignore the Employment Agreement's forum selection clause but attempt to enforce its compensation provisions by claiming that Mrs. Jackson is entitled to "the value of all compensation [she] would have been paid pursuant to the Employment Agreement." (Am. Compl. ¶ 162.) Plaintiffs cannot have their cake and eat it, too.

Nor is there any reason to think that a Minnesota state or federal court would "ineffectively or unfairly" handle this lawsuit. "Different or less favorable foreign law or procedure alone does not satisfy this prong," and the Sixth Circuit has held that Courts in various foreign jurisdiction such as Gibraltar, England, Germany, and Brazil are satisfactory forums. *See Wong*, 589 F.3d at 829. Minnesota courts are entitled to no less respect. Moreover, Delaware law controls *all* of the relevant agreements. (JA0117 § 25; JA0144 § 12.7; JA0160 § 19; JA0217 § 12; JA0254 § 12.7.) A Minnesota Court is no less

qualified to interpret Delaware law than this Court. *Cf. Int'l Equity Invs., Inc. v. Cico*, 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006) ("the forum of choice of either side would have to apply [foreign] law, which tends to diminish the significance of that factor").

Finally, to avoid enforcement of a forum selection clause, a party must show "that its enforcement would be unjust or unreasonable," and "[t]his finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Wong*, 589 F.3d at 829. Plaintiffs cannot make such a showing with respect to litigating their claims in Minnesota, particularly since Mrs. Jackson repeatedly and expressly agreed to waive "any claim that any proceeding brought in [Minnesota] has been brought in an inconvenient forum or that the venue of that proceeding is improper." (JA0145 § 12.8; JA0217 § 12; JA0254-255 § 12.8.) And because there is a pending Minnesota lawsuit relating to the very same agreements at issue here, enforcing the forum selection clause will not result in delay for any party. For all of these reasons, Plaintiffs cannot meet their burden to show that the forum selection clauses are unenforceable.

### B. The forum selection clauses apply to all claims.

Not only are the forum selection clauses enforceable, but they apply to *all* of the claims in the Amended Complaint. The clauses in the Composites Operating Agreement, the Companies Operating Agreement, and the Amended Companies Operating Agreement cover "*any proceeding* arising out of this Agreement or arising out of disclosure or use of Confidential Information." (JA0144–145 § 12.8; JA0217 § 12; JA0254–255 § 12.8.) The forum selection clauses in the Employment Agreement and Confidentiality Agreement likewise cover "*[a]ny legal proceeding* related to this Agreement." (JA0117 § 25;

JA0160 § 19.) "The word 'any' is all-encompassing language, indicating the parties' belief that all actions regarding their relationship will be governed by the forum selection clause." *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-CV-0916, 2005 WL 1038842, at *3 (S.D. Ohio May 3, 2005); *see also Hasler Aviation, L.L.C. v. Aircenter, Inc.*, No. 1:06-CV-180, 2007 WL 2463283, at *5 (E.D. Tenn. Aug. 27, 2007) (concluding that the words "any matter" were "deliberately broad"). The forum selection clauses were intended to prevent precisely what has occurred here—parallel lawsuits about the same agreements and disputes in different forums. Dismissal at this early stage would prevent manifest inefficiency and risk of inconsistent judgments.

The fact that the Amended Complaint includes tort and statutory claims does not avoid application of the forum selection clauses. Instead, "courts have generally held that when the relationship between the parties is contractual, the creative pleading of alternative, non-contractual claims does not suffice to circumvent the forum-selection clause if the forum selection clause is broad enough to include them." *Micropower Grp. v. Ametek, Inc.*, 953 F. Supp. 2d 801, 808 (S.D. Ohio 2013); *see also Kresser v. Advanced Tactical Armaments Concepts, LLC*, 2016 WL 4991596 at *3 (E.D. Tenn. Sept. 16, 2016); *Angiosystems*, 2016 WL 919001, at *4; *Hasler Aviation*, 2007 WL 2463283, at *5; *Hildebrand v. Optimal Mortg. Servs., LLC*, No. 3-16-0618, 2016 WL 3258418, at *2 (M.D. Tenn. June 14, 2016) (FLSA claims covered by forum selection clause); *Cameron v. X–Ray Prof'l Ass'n*, No. 16-CV-343-LM, 2017 WL 680388, at *3 (D.N.H. Feb. 21, 2017) (alleged violation of the Stored Communications Act, 18 U.S.C. § 2701, and other statutory causes of action covered by forum selection clause).

Moreover, any argument that Plaintiff Jeffrey Jackson is not bound the forum selection clauses must be rejected. Courts have repeatedly held that a forum selection clause will bind a party who is "closely related" to the signor if it is "foreseeable" that he will be bound—even if he never signed the agreement. *See Shaffer v. Interbank FX*, No. 3:12-CV-231, 2013 WL 53979, at *5 (E.D. Tenn. Jan. 3, 2013) ("closely related" non-signatory plaintiffs bound by forum selection clause); *Hassinger Corp. v. Activant Sols. Inc.*, No. 3:09-CV-391, 2010 WL 2710779, at *3 (E.D. Tenn. July 7, 2010). Spouses like Mr. and Mrs. Jackson are—by definition—"closely related." *Madoff v. Bold Earth Teen Adventures*, No. CIV. 12-00470 SOM, 2013 WL 1337337, at *4 (D. Haw. Mar. 28, 2013) ("spouses are so 'closely related' that they bind each other to forum selection clauses") (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)).

In addition, a voluntary plaintiff, like Mr. Jackson, who joins another plaintiff bound by a forum selection clause "arguably acquiesc[es]" to the application of that clause and should "not . . . be heard to object to jurisdiction limited the venue(s) to which his co-plaintiffs agreed." *Marano Enters. v. Z-Teca Rest., L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001); *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases and concluding that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause").

In light of the relevant forum selection agreements, and particularly given that Plaintiffs re-pleaded in an apparent attempt to emphasize the interrelatedness of their claims in order to avoid severance of Mr. Jackson's claims, *all* nine counts of Plaintiffs' claims must now be dismissed or transferred:

Count I (Plaintiffs' Wiretap Act claim) arises out of and relates to the Companies Operating Agreement, the Amended Operating Agreement, and the Employment Agreement. Specifically, Plaintiffs claim that the alleged recordings (1) took place during the course of their employment at LeMond Companies and/or LeMond Composites, (2) were related to the business Plaintiffs were conducting on behalf of LeMond Companies and/or LeMond Composites, and (3) were used "in an attempt to force [Mrs. Jackson] to mediate her claims against Defendants." (Am. Compl. ¶¶ 83–84, 88–90, 93, 126). Courts routinely find claims of employer misconduct to be encompassed by forum selection clauses covering claims "related to" employment agreements. *See, e.g.*, *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330–31 (11th Cir. 2011) (employee's statutory claims against employer fell "squarely within" a forum selection clause covering "all claims or causes of action relating to or arising from" an employment agreement). In *Cameron*, 2017 WL 680388, at *3–5, the court noted that "claims may be 'related to' a particular agreement although they seek to enforce rights that do not arise directly out of the agreement," and this included an employee's statutory claims against an employer related to electronic communications. Given these points and the relationship between Mr. and Mrs. Jackson, there is no doubt that the Wiretap Act claims should be considered together in a forum chosen by Mrs. Jackson when she executed the relevant contracts.

Counts II and III allege that Mr. Jackson was not paid sufficiently under the Fair Labor Standards Act and that Mrs. Jackson's employment agreement was terminated for complaining about his alleged underpayment. Again, Mrs. Jackson's claims relating to termination of employment arise out of and relate to her job duties and authority under

the Companies Operating Agreement, the Amended Companies Operating Agreement, and the Employment Agreement. The new contention in the Amended Complaint that her termination was retaliation for complaining about Mr. Jackson's compensation changes nothing. If anything, that new allegation means only that Mr. and Mrs. Jackson's claims are more interrelated than they appeared at first blush and that *both Plaintiffs' claims* should therefore be dismissed or transferred.[2]

Count IV (declaratory relief) expressly relates to Mrs. Jackson's agreement to amend the Companies Operating Agreement (by way of the Amended Companies Operating Agreement), and her agreement to the Employment Agreement and the non-competition provisions contained in the Confidentiality Agreement (upon which the Employment Agreement was contingent). These agreements contain forum selection clauses that compel the resolution of this dispute in a forum other than Tennessee.

Count V (fraud) is again tied directly to Mrs. Jackson's agreement to the non-competition provisions of the Confidentiality Agreement, which was part and parcel of an Employment Agreement. (*See* JA0116 § 18.) As a result, her claims about those provisions are undoubtedly "related to" the Employment Agreement and the Confidentiality Agreement and covered by both agreements' forum selection clauses. (*See* JA0117 § 25; JA160 § 19.) Count V arises from the Companies Operating Agreement and the Amended

---

[2] Even if Mr. Jackson were not bound by the forum selection clause, the Court should enforce Mrs. Jackson's agreements by dismissing her claims or by severing and transferring them to the District of Minnesota. *See Royal Smit Transformers BV v. HC Bea-Luna M/V*, 2017 WL 819243 at *4-5 (E.D. La. Mar. 2, 2017) (severing and transferring claims governed by forum selection clause); *Bassett Seamless Guttering, Inc. v. Gutterguard, LLC*, 2006 WL 156874 at *8 (M.D.N.C. Jan. 20, 2006); *AC Controls Co. v. Pomeroy Computer Res., Inc.*, 284 F. Supp. 2d 357, 365 (W.D.N.C. 2003).

Companies Operating Agreement because, without those agreements, Mrs. Jackson would not have been in business with Defendants and would not have been the CEO of LeMond Companies. *See Kresser*, 2016 WL 4991596 at *3 ("Tort claims . . . can be encompassed by a contractual forum-selection clause if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if the tort claims involve the same operative facts as a parallel claim for breach of contract.").

Count VI just *is* Mrs. Jackson's claim for breach of the Employment Agreement, which contains a forum selection clause. (JA0117 § 25.) That claim must be heard in Minnesota or Delaware, pursuant to the forum selection provision in that agreement.

Counts VII and VIII allege breaches of fiduciary duties arising from the contractual relationships and resulting businesses formed through the Companies Operating Agreement and the Amended Companies Operating Agreement. Such claims are covered by the forum selection clauses in those agreements. *See Kresser*, 2016 WL 4991596, at *3.

Count IX (wrongful removal) pertains directly to the roles that Mrs. Jackson held pursuant to the Amended Companies Operating Agreement and the Employment Agreement and is therefore covered by forum selection clauses in those agreements. *See, e.g., Cameron*, 2017 WL 680388, at *3 (claims "premised on the termination of a relationship governed by the Employment Agreement" are "clearly 'related to' the Employment Agreement and thus subject to the forum selection clause"). If those agreements were somehow declared void, Mrs. Jackson's relationship with Defendants would have been governed by the original Companies Operating Agreement, which

contains a forum selection provision identical to that in the Amended Companies Operating Agreement. (*Compare* JA0144–45 § 12.8 *with* JA0254-55 § 12.8.)

For all of these reasons, the forum selection clauses are enforceable and applicable to all of Plaintiffs' claims, and this case should therefore be dismissed under Rule 12(b)(6). *Angiosystems*, 2016 WL 919001, at *3 (if a forum selection clause is "enforceable and applicable . . . then the suit should be dismissed"). This will allow the parties' dispute to proceed in a forum to which they agreed, namely Minnesota state or federal court.

## II.    In the alternative, the Court should transfer this case to the District of Minnesota, pursuant 28 U.S.C. § 1404(a).

As discussed above, this case should be dismissed without prejudice in favor of the pending suit in Minnesota, and Plaintiffs should assert their claims within that litigation. In the alternative, Defendants respectfully request that the Court transfer this lawsuit to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). *See Kresser*, 2016 WL 4991596, at *2 (considering alternative motions under 28 U.S.C. § 1404(a) and Rule 12(b)(6)).

In considering a motion under Section 1404(a), courts generally "consider the private interests of the parties, the public interest in litigating the case in the chosen forum, and the interests of judicial economy implicated by a potential severance." *Kresser*, 2016 WL 4991596, at *5. But this "calculus changes" when "the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).) Such a provision should be afforded "controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 134 S. Ct. at 581. As

discussed above, Plaintiffs' claims are covered by binding forum selection clauses. If the case is not dismissed, then it must be transferred to the District of Minnesota.[3]

### III. If the Court reaches the merits, then the Wiretap Act claim should be dismissed under Rules 12(b)(6) and 56.

The Amended Complaint fails to state a claim for violations of the Wiretap Act with respect to all but one of the alleged recordings. As to the one allegation that might conceivably state a claim for violation of the Wiretap Act, the undisputed facts show that there was no violation and Defendants are entitled to summary judgment.

Dismissal under Rule 12(b)(6) is appropriate where a plaintiff's factual allegations, even if true, could not support a claim for relief. *See United States v. Garman*, No. 3:14-CV-172, 2016 WL 3562062, at *3 (E.D. Tenn. June 24, 2016). The Court must assume that all facts alleged in the Plaintiffs' complaint are true, but the "assumption of veracity . . . does not extend to bare assertions of legal conclusions, nor is the Court bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted). In addition, a party may move for summary judgment "at any time" until 30 days before the close of discovery. Fed. R. Civ. P. 56(b). "A defendant . . . is not required to respond in the form of an answer before making a motion for summary judgment, which may be made by a defending party 'at any time.'" *Jones v. U.S. Dep't of Justice*, 601 F. Supp. 2d 297, 302 (D.D.C. 2009) (quoting Fed. R. Civ. P. 56). Upon motion,

---

[3] Even if Mr. Jackson's claims were not covered by the forum selection clauses, transfer of all claims would still be appropriate, given the strong interest in judicial efficiency and the lack of countervailing private or public factors weighing in favor of a Tennessee forum. *See Kresser*, 2016 WL 4991596, at *5. Litigating in the same forum as his wife will impose little additional burden on Mr. Jackson, and—as in Kresser—"[t]he public interest factors do not weigh strongly either way given that this is an employment dispute that is unlikely to have broader effect on the public at large." *Id.*

"[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). In response to a summary judgment motion, the opposing party may not rest on the allegations in its complaint but must instead "produce by affidavit or otherwise specific facts showing that there is a genuine issue for trial." *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 134 (6th Cir. 1969) (quotation omitted).

By its plain language, the Wiretap Act *expressly permits* a party to a conversation to record the discussion—*even without the consent of other parties*:

> **It shall <u>not</u> be unlawful under this chapter** for a person not acting under color of law to intercept a wire, oral, or electronic communication **where such person is a party to the communication** or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphases added). "The Wiretap Act is a 'one-party consent' statute, i.e., it is not unlawful under the Act for a person to 'intercept ... electronic communication' if the person 'is [1] a party to the communication or [2] where one of the parties to the communication has given prior consent to such interception.'" *In re Nickelodeon Consumer Privacy Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *13 (D.N.J. July 2, 2014); *Boddie*, 881 F.2d at 268.

Notwithstanding sworn affidavits and indisputable evidence submitted in opposition to the original Complaint, the Amended Complaint continues to allege that Mr. Jacome secretly participated in and recorded a conference call with Mrs. Jackson and representatives of Lucintel. Specifically, Mrs. Jackson alleges that "the only people invited

to participate in the [Lucintel call] were [Mrs. Jackson], Don Naab, a Composites employee, and the Lucintel representatives." (Am. Compl. ¶ 89.)[4] In fact, the documentary record shows that Don Naab sent *both* Mr. Jacome and Mrs. Jackson invitations to the call. (JA0029–30 ¶ 3, JA0035–37; JA0073–74 ¶ 2, JA0078–79; JA0161–163.) The invitation openly invited Jacome to the conference call. (*Id.*) When Mr. Jacome accepted this invitation, Don Naab responded "Great!" and "I'll see you on the call. . . ." (JA0029–30 ¶ 3, JA0039; JA0073–74 ¶ 2, JA0081.) Mrs. Jackson accepted the invitation *with a copy to Jacome*:

From: <connie@lemond.cc>
Date: Thu, Oct 27, 2016 at 6:13 PM
Subject: Re: Invitation: Market data: Low cost carbon fiber @ Fri Oct 28, 2016 10am - 11am
(connie@lemond.cc)
To: Don Naab <dnaab@lemond.cc>
Cc: alex@lemond.cc, sanjay.mazumdar@lucintel.com

Works for me.

Sent from my iPhone

(JA0042; *see also* JA0029–30 ¶ 3, JA0041–43; JA0073–74 ¶ 2, JA0083–85.) Later in the day on October 27, Lucintel representative Roy Almaguer sent *another* invitation to the call, again identifying both Mrs. Jackson and Mr. Jacome as invitees. (JA0030 ¶ 4, JA0044–45; JA0074 ¶ 3, JA0086–87, JA0179 ¶ 1, JA0181–182.) A subsequent reminder sent to all invitees on the morning of October 28 again showed all participants—including Mrs. Jackson— that Mr. Jacome would be on the call. (JA0030–31 ¶ 5, JA0047–48; JA0074 ¶ 4, JA0088–89; JA00166–167, JA0179 ¶ 2, JA0183–184.)

---

[4]   As noted above, although Mrs. Jackson alleges that there was a teleconference with Lucintel in November 2016, no such call occurred. (JA0029 ¶ 2; JA0077 ¶ 14.) The only call with Lucintel was on October 28, 2016. (*Id.*; JA0034 ¶ 14.)

Even if Mrs. Jackson had been unaware of his participation, other participants knew Mr. Jacome was part of the Lucintel call. Don Naab attests not only that he knew Mr. Jacome planned to participate, but that Mr. Jacome *spoke during the call.* (JA0073–74 ¶ 2, JA0075 ¶ 7.) Mr. Almaguer—an employee of Lucintel who has no dog in this fight—corroborates this, attesting that he knew that Mr. Jacome would be (and was) on the call and that he spoke with Mr. Jacome during the call. (JA0179 ¶ 1–4.) If there were any doubt, it is resolved by an email that Mr. Almaguer sent immediately after the call to Mrs. Jackson, Mr. Naab, Mr. Jacome, and others—thanking all of them "for the time today." (JA0032 ¶ 11, JA0054–55; JA0075 ¶ 8, JA0094–95; JA0179 ¶ 5, JA0189-190.) Mrs. Jackson responded to the participants, again including Mr. Jacome, to express her thanks for the time on the call:

From: <connie@lemond.cc>
Date: Fri, Oct 28, 2016 at 7:16 PM
Subject: Re: Call With LeMond Composites and Lucintel
To: Roy Almaguer <roy.almaguer@lucintel.com>
Cc: "dnaab@lemond.cc" <dnaab@lemond.cc>, "alex@lemond.cc" <alex@lemond.cc>, Sanjay Mazumdar <sanjay.mazumdar@lucintel.com>, Frank Swehosky <frank.swehosky@lucintel.com>, Nicolas Wegener <nic@lemond.cc>

Roy,

Thank you and the Lucintel team for the time today.

Please send us your NDA, assuming you have a two way.  Otherwise, we will send our one way and we will go from there.  Please advise on the NDA.

Best,
Connie

(JA0057; *see also* JA0033 ¶ 12, JA0056–58; JA075-76 ¶ 9, JA0096–97; JA0174.) In short, Mr. Jacome was a known participant in the Lucintel call and was therefore entirely within his rights to record the call under the federal Wiretap Act. *Boddie v. Am. Broad. Cos., Inc.*, 881 F.2d 267, 268 (6th Cir. 1989) (noting that the Wiretap Act "privileges a party to a communication to intercept and record that communication without the other party's

consent"). To the extent Plaintiffs' Wiretap Act claim rests on Mr. Jacome's recording of the Lucintel call, summary judgment is appropriate.

In an effort to stave off dismissal of the federal Wiretap Act claim, the Amended Complaint asserts that Mr. Jacome recorded additional communications of Mr. or Mrs. Jackson without their knowledge or permission. It alleges that Defendant Jacome recorded an in-person meeting in California in November 2016 (Am. Compl. ¶ 83–84); a conference call with Mrs. Jackson and Tesla Motors (*id.* ¶ 93); and an in-person meeting with representatives of "Alta" (*id.*). Critically, in contrast to the allegations regarding the Luctinel call, Plaintiffs fail to allege that Mr. Jacome was anything but a party to these newly alleged conversations. And with regard to the alleged California recording, Plaintiffs affirmatively allege that Mr. Jacome traveled to that state with Mrs. Jackson and others *to attend the meeting*. (Am. Compl. ¶¶ 83–84.) If Mr. Jacome was a known party to the conversations, he would have been completely within his rights under the Wiretap Act to record the communications—whether Plaintiffs consented or not.[5]

Finally, Plaintiffs vaguely assert that Mr. Jacome has made "other recordings." (*See id.* ¶¶ 93, 123.) This general accusation again does not state a claim because it fails to allege that Mr. Jacome was not a party to any such "other" conversations. Again, when a conversation is recorded by a party, there is no violation of the Wiretap Act; it does not matter whether other parties knew about or consented to the recording. For these

---

[5] Plaintiffs assert that this and other recordings violated state law (Am. Compl. ¶ 85, 93), but they assert no cause of action on that basis. Moreover, a violation of state law— even if properly alleged—would not trigger a violation of the federal Wiretap Act. *See e.g. United States v. DiFelice*, 837 F. Supp. 81, 82 (S.D.N.Y. 1993) (alleged violation of Massachusetts wiretap law did not establish a violation of federal law).

reasons, the Amended Complaint's new recording allegations fail to allege facts sufficient to show any violation of the Wiretap Act and must be dismissed under Rule 12(b)(6.

## CONCLUSION

At its core, this case is a dispute between business associates who repeatedly agreed to litigate in a different forum. The Court should enforce the parties' agreement by dismissing this case in its entirety. This would allow the parties to resolve their disputes in Minnesota—the agreed forum—where a lawsuit is already pending. In the alternative the Court should transfer this matter to the District of Minnesota. To the extent the Court reaches the merits, the Court should dismiss Plaintiffs' meritless Wiretap Act claim.

Dated: March 14, 2017

**BERNSTEIN, STAIR & MCADAMS LLP**

/s/ W. TYLER CHASTAIN
Daryl R. Fansler, TN No. 010219
W. Tyler Chastain, TN No. 016029
116 Agnes Road
Knoxville, TN 37919
dfansler@bsmlaw.com
wtylerc@bsmlaw.com
(865) 546-8030

**GREENE ESPEL PLLP**

*Pro hac vice*
Lawrence M. Shapiro, P.A., MN No. 0130886
Mark L. Johnson, MN No. 0345520
Karl C. Procaccini, MN No. 0391369
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
lshapiro@greeneespel.com
mjohnson@greeneespel.com
kprocaccini@greeneespel.com
(612) 373-0830

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 14th day of March, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ W. TYLER CHASTAIN
W. TYLER CHASTAIN
(Tennessee BPR No. 016029)